May it please the Court, my name is Ryan Norwood. I'm an attorney with the Federal Public Defender of Nevada, and I represent Mr. Navas. I'd like to reserve about two minutes of my time for rebuttal. The lower court faulted Mr. Navas for doing exactly what this Court and what the United States Supreme Court said a petitioner should do when he's concerned about the timeliness of the state proceedings. He filed a protected petition in federal court. Instead of granting the stay that he asked for so that he could finish litigating in state court, the district court forced him to dismiss his petition. What we're asking here is that it's just that this petition, he stayed pending the outcome of the ongoing proceedings in the state court so that a timely federal remedy can be preserved in the event that Mr. Navas should need it. The district court is claiming in its order that Mr. Navas was impatient and that he jumped the gun in coming to federal court. That's anything but what happened here. Mr. Navas spent seven years in the state courts challenging his conviction before he ever came to the federal courts. He was initially convicted via a plea. He spent two years in state court getting that plea undone. He had a trial. After his conviction, he spent three years in state court challenging that conviction on the direct appeal. After that direct appeal was denied, actually, he filed during the pendency of that appeal, a state habeas petition, which the Court never acted upon. After the direct appeal was denied, he filed another petition within the state one-year limit. Soon thereafter, an order was issued granting him informal papyrus status and then saying that the matter of appointment of counsel would be referred to the trial judge. But then nothing happened for two years in the state courts. So Mr. Navas waited and waited, and finally, about ten months after that last order and after two other motions that he filed were submitted with no response from anyone, he finally filed this Federal petition in a Federal court. And then subsequently, after my office was appointed, we asked for the case to be stayed so that he could continue litigating his case in the state courts. The reason that this protected petition stay is important is because of the United States Supreme Court's decision in pace. If you have a state petition, it can stay the Federal clock, but only if that petition is properly filed. Pace says that properly filed means that the petition has to be deemed timely by the state courts. And the wrinkle in pace, and also in this Court's more recent decision in Rudin, is that that problem still arises even if that timeliness issue should pop up years after the fact. In both Pace and in the Rudin case, the Petitioners thought they were litigating a timely petition in the state courts, and in fact, they got a decision on the merits of that, of that petition in the state courts. Then on appeal, the State all of a sudden raises a timeliness objection, and the State appellate court says, well, you shouldn't have decided the petition on the merits because it's untimely. And what happened in both Pace and Rudin is that the Petitioners were left holding the bag, because when they came to Federal court, that Federal petition was untimely. So the solution to that that the Supreme Court set forth in Pace and that this Court reiterated in Rudin was, you know, if there is a concern about the timeliness of your petition, you should file a protected Federal petition, and then you should be able to get a stay for that petition. That's what Mr. Navas did here. What the lower court did was if you know, is events unplayed here, and I don't know, I can't recall the exact timing of the events, but after he filed, if he finally got his State court petition underway, it was eventually granted in part. Yes. Correct? Yes. It was granted in part, and right there is an ongoing appeal and cross-appeal that were recently submitted to briefing. So at some point, the district court takes a look at it and says, wow, the State petition is still ongoing. No. To be clear, I don't think there should be any timeliness issue at the State proceedings, and the State is saying, the State in its briefing is saying that this is a timely proceeding. The problem is, you know, that's what Pace and Rudin thought, you know, when they were at the district court level, and then it was on appeal that this issue cropped up. The problem is particularly acute in Nevada because of the way Nevada treats its procedural rules. It treats them essentially as jurisdictional issues. It said in a case called Haberstroh that I cite in the briefing that even if nobody is raising a procedural issue, in fact, even if the State is seeking to waive or stipulate to the issue, we still have an independent duty to come in, and if we think that there is a timeliness issue, to rule upon it. I don't think that should happen in this case, but until we get this final result from the Nevada Supreme Court, there's really no way to be sure. The standard that the district court was applying when it was a substantial question about timeliness, is that something like that? It was an actual significant timeliness issue. Yes. That's what the district court was. That's pretty demanding. It's a very demanding standard. And, you know, if the Petitioner Rudin, for example, had come in when the court said she needed to come in to file a protective petition, I don't think she could have met it, you know, because at the point when her clock was running, the State district court was saying, you're okay, you know, your petition is timely. In fact, it went on, like in this case, to grant her relief on that. So what we're doing, if we say that a standard like that is okay, is we're issue, you know, we can't nickel and dime the Petitioner on exactly what the extent of that issue is when he's there. At least when he filed this petition. And, in fact, especially when he filed this petition, Mr. Navas had at least some basis to believe that there might be a problem. You know, ten months had passed, and he hadn't heard anything from the court. Even if there was nothing wrong, there were, you know, a Petitioner in his circumstance, we're talking about a person here who was in his late 70s, whose competency has been challenged throughout the State court proceedings, might have thought that there was something wrong here. The petition was dismissed and nobody told him. So, again, he did what courts have said you should do when you have this sort of concern. There was one thing that sort of ran through the district court judge's order, which was that I believe it was in Rimes? Rimes? Yes. And the court said, well, they approved stay in abeyance. Basically, but we don't want this to become a machine. And the district court seems to have taken that pretty much to heart and said, if we grant a stay here, this would be more like granting it on a routine basis. What do you say to that? I'm not saying that we need to grant a stay every time somebody runs into Federal court with a petition. There are a few things here. One, this is a Petitioner who has already been spending years in the State court challenging his conviction. By the time he comes in, you know, there's at least something more – there's at least some basis for him to believe that there's something wrong with the petition, given this long delay in acting upon what the court said it would act upon. You know, and the other part of this is, you know, especially after this Court's decision in Wooten, I mean, this is something, you know, I wouldn't say that they're going to become routine, but Petitioners, especially in Nevada, where there's always this possibility of a timely issue cropping up years after the fact, are going to need to come into Federal court to protect their rights in some circumstances. So I'm not saying that they have to be granted in every case, but at least under the circumstances of this case, a stay was appropriate. I cited some district courts from other jurisdictions that have been confronted with similar situations on page 25 of the opening brief. And again, all those courts are talking about stays being appropriate when there's a possibility, a concern, a risk of a timeliness issue, which is consistent with what the same court said in Pace and what this Court said in Wooten. In fact, there are some courts that are granting stays even though there doesn't appear to be any timeliness issue at all. Again, we're not seeking to circumvent the stay process here. No. Quite to the opposite. We want that process to play out. It has to play out. All we're seeking here is a stay, which, in the grand scheme of things, is a very minor inconvenience. On the other side of that, you know, if, you know, if, you know, God forbid, something should happen with this petition and it gets found untimely, then what the risk Mr. Novice is facing is that he's going to lose any right to Federal review. Let me ask you this. So in Rines, the Court talked about good cause. Yes. And in Pace, the Court says reasonable confusion. What Pace said was that reasonable confusion was good cause to file the protected petition. And I'm saying that's where Mr. Novice ---- The State recently brought to our attention a very recent case, Blake, I think it's Blake, Blake v. Bateman, filed a 28-J letter the other day. No, I didn't see that 28-J letter. I've been in San Francisco the entire week. A recent opinion by Judge Tshishima dealing with whether or not alleged ineffective assistance of post-conviction counsels, like Martinez, could be a basis for getting a stay, stay in advance. And in that opinion, Judge Tshishima, the author of the opinion, drops a footnote and says, well, the comment in Pace about reasonable confusion is just dicta. Well, it's ---- again, I haven't ---- I haven't seen the letter, so I don't ---- I can't directly respond to it. I mean, what I would say is that it's sort of a different ---- what Blake involves is sort of a different type of stay issue than what's involved here. What we're talking about here is the need to file a protected petition when there's some concern about losing the right to Federal review. And what the Supreme Court says, what it directly says in Pace is, if you have some reasonable confusion about what's going on, and this was just reiterated by this Court in the Rudin case, Rudin says, you know, at some point there was a possibility of a timeliness issue. What you needed to do at that point was to come in the Federal court with your protected petition. And obviously, that doesn't do you any good if that protected petition is going to be immediately dismissed by the court because, you know, you don't ---- because you can't get a stay under rise. So this is ---- good cause is not supposed to be an onerous standard here, at least under the circumstances of this case that there should be enough for it. There's just one other comment I want to make about the State's briefing. The State is saying, in so many words in its briefing, that this is a timely State petition, that it should be adjudicated on its merits there, and that, therefore, all the time that's running right now should be told until those State proceedings conclude. I hope that's what happens. But, again, if we're wrong, that creates a problem. One thing the State could do, if that's really their position, is they could also tell this Court that we turn out to be wrong and this petition is untimely, that they're not going to oppose Mr. Navas filing a Federal petition after the fact, and that they can agree that he should get some type of equitable toll, right? Because, frankly, it's hard to see what else Mr. Navas could do here to ensure that he has a timely Federal remedy. You know, he's already done what the Court said he should do, and if what happens here, and I don't think it's what should happen, if the result is that that petition is nonetheless dismissed, I think we would be unreasonably impairing his right to relief if we were to say, sorry, you're out of luck. He comes back to Federal court when the State proceedings are concluded. Unless there are any other questions, I will reserve the remainder of my time. Adam Woodrum for the Nevada Attorney General's Office, representing the Respondents in this case. I think what we have here, with due respect to Mr. Norwood, who I work with and against quite a lot, he's kind of fallen into the circumstance of this case. And the circumstance of this case is that the petitioner, while he was pro per, did jump the gun. I mean, that's exactly what he did. He waited 10 months. He waited what is a completely ordinary amount of time to pass for a State petition to end, and he jumped the gun. The Federal Public Defender is appointed after he files his Federal petition. He had an abundance of caution. He's an old, elderly gentleman, may have had some competency issues. I disagree with that, but again, there aren't a lot of facts to that developed, at least in the Federal court. And then, of course, obviously, counsel is here trying to preserve this Pace petition, is what he calls it. It's just simply not a Pace petition. If you look at Pace and the facts of Pace, they're very clearly distinguishable. Pace involved a change in law. It was also a petitioner who was convicted pre-AEDPA and who filed his and litigated his Federal petition post-AEDPA. There was also an intervening change in, I believe, Pennsylvania law. That, as the Supreme Court said in Dicta, may constitute a good cause to file a protective petition under Rines. Ultimately, Rines rules. Pace does not rule. Pace does not say you can file a protective petition when you get nervous about your deadline. It simply doesn't do that. And if we were to do that, we'd just swallow the good cause completely. Well, is it true, as counsel said, that in Nevada, the timeliness issue of Rice is jurisdictional? So even if you're going through the process as he is now, apparently, you can tell it forth. Well, that would be true in every single case in Nevada. That would be routine in Nevada that you could get potentially. I mean, it's potential in every case. We're talking about a Supreme Court rule. As far as national, it doesn't matter. As embedded in the jurisdiction, a poison pill, taking time from time, the better analogy for that would be there's uncertainty because this one is closed for purposes of AEDPA. That's just polling and all of that. So it depends on the fit. I mean, that's why I have a little slowly jumped the gun. He had 100 days, roughly. And again, I mean, facially, he has those days. But to answer your specific question, I believe your specific question is, I was getting to it, and I'm sorry, I should have gotten right to it. While Habertow or Haberstroh, they do say that there is a jurisdictional issue of timeliness and that you're either timely or you're untimely. They go on to say that we can complete a stipulation to timeliness as facts constituting good cause for excusing procedural default. So the Nevada Supreme Court is not putting a hammer down on Haberstow in this case just because he's late. All along, he thought he was timely. All along, the state conceded he was timely. And when they finally got there, the Nevada Supreme Court said, okay, we're going to let this operate as a stipulation to good cause in state court, state court good cause. So no, I don't think that it's, I don't think it's as poisonous. I certainly can't. In part because I don't represent the county, and obviously the county is prosecuting this appeal. And secondly, because this is, while it's facially timely, and the district courts said it's facially timely, obviously I wouldn't want to waive a timeliness argument in exchange for a stay. Obviously, I wouldn't want to do that. So I'd probably preserve that over avoiding the stay. Okay. So let me ask you this. So the district court, when it first looked at the petition, was it 70-some-odd years old at the time? The district court? Yeah, when the district, when they first started looking at the petition, had been alerted somehow or other that the novice had some topic. The matter had, there had been long-time pending proceedings in the state court, and he appointed the federal public defender to assist. And he explained that he did that out of abundance of caution. So let me just, let me just say this. I'm sorry. So the district court hears that when he ultimately dismisses, you know, denies the request for staying, well, there's no actual significant timeliness. Where does that standard come from? Well, I'm not sure that that standard comes from anywhere. Why should that be the standard? Well, I think that the standard comes from RINES. And I've said, I think... RINES says good cause. Yeah. We don't know what good cause is. We know good cause is not extraordinary. Well, why should actual significance? I mean, that suggests to me that, you know, we've got, there's about 10 days left. That might be a significant timeliness issue. That might be. Two days might be also. And I think that was Blake. I think it was a two-day case. So here we have a fellow that is elderly. The case has been pending in state court for a long time. The prosecutor is concerned about that. The case has been pending in state court for a while. Why isn't that? The petitioner is concerned about that for a while. Stay? Case on the back burner? Well, do your thing in state court and then come back here. Well, I mean, I guess... I mean, the whole purpose is to accomplish exhaustion through the state court which I can talk to you about. The federal court... Well, respectfully, Your Honor, the purpose of EDPA is to encourage exhaustion in state court prior to coming to federal court. And Mr. Navas could not be a better example of this than he is. He has had his sexual assault conviction, his most serious conviction, has been reversed by the trial court. And the prosecutor is trying to have it reinstated in the Nevada Supreme Court. But Mr. Navas has been the picture diligence in state court, so diligent that he has a timely held appeal. Well, the case has been sitting there for quite a while. Well, and just to be fair, if I could speak to that, the Supreme Court cert time expired March of 2009. There was quite a lot that happened before that, beginning with Mr. Navas pleading no law. The direct appeal? Cert from direct appeal expired March 2009. That was 90 days after remitted her from the Nevada Supreme Court. Mr. Navas pled no law, contendered, and then went through quite a lot of battle to get that plea withdrawn. And the Nevada Supreme Court kind of said, well, we're not going to give you that time. We're not going to count that time, for example, towards a speedy trial violation. If you want a speedy trial, don't plead guilty. So it's not really been seven years fighting any sort of ineffective assistance claim in federal court. It's really been five years. And I don't think that that's uncommon in any sense of the word. Well, he's talking about seven years before the five-year start. He's talking about the time before that five-year start. He wants to include that time, and I don't include that time. The remedy here, what's interesting is there is a remedy. And I think that the district court pretty plainly hinted at the remedy, which is a Kelley stay. And Kelley stays are still sufficient. They're still operating in this circuit. The Kelley stay avoids violating the AEDPA twin purposes of finality and encouraging exhaustion. And if Mr. Navas is genuinely concerned that he's got an untimely petition, he goes and says, okay, I may have an untimely. I'm sorry? Remind me. Oh, certainly. Educate me. And he goes to the district court and says, I want a Kelley stay. Under a Kelley stay, I don't get to say anything about it because it does not implicate AEDPA. He says, okay, stay my exhausted claims, dismiss my unexhausted claims, and let me finish them up in State court. That's what the district court hinted at by saying, Mr. Navas, see. But the problem with that, he will forfeit. It's possible that he may end up forfeiting because if the Federal court finishes up all the work on the exhausted claims and enters a judgment, then you've got to come back to the State court. Then you have problems with the sufficient petition. No, because the Kelley stay stays exhausted claims. You stay the exhausted claims, separate them from the unexhausted claims. And allow me to cite Kelley. I really don't understand it. King, no. Why is it so different? Well, it's different because it doesn't implicate AEDPA concerns. Because you're not staying claims that are unexhausted. Obviously, we know, as far back as Rose or before then, that you cannot, you cannot adjudicate unexhausted claims. They cannot be adjudicated. They have to go to State court. Why is granting a stay of unexhausted claims adjudicated? Well, it is under Rhines. But under Pace. I read Pace. Pace seems to suggest that he's an unexhausted claim. A fully unexhausted claim. Well, I think that that would violate Raspberry in this jurisdiction, at least, to stay a fully unexhausted claim. Raspberry really doesn't address what Pace is saying. Well, Pace is an equitable tolling case. I mean, and the portion for which Mr. Novoseltz cites Pace is dicta. And we know that it's dicta from Blake. That's not what Pace was about. Pace was about equitable tolling. They just happen to say, oh, by the way, there's this Rhines case out here. So if you've got a reasonable confusion, then you can file a protective stay. Protect yourself. Oh, by the way, they were arguing. I'm sorry? Oh, by the way, they were arguing. Sorry. Well. The difference I think the Supreme Court probably would do that. Well, I don't know how the Supreme Court would do things. I know a panel of this Court viewed Pace as dicta for the proposition that Mr. Novoseltz cites. That's what I know. We have lots of dicta cases. That might be the case. I mean, it can't be dicta. Because it wasn't necessary to decide his case. Except I think it was dicta before that. I think it was dicta before that. I mean, when an issue doesn't decide a case, it's dicta. What else is it? A commentary? Well, you know, when the Supreme Court Even when the Supreme Court on something that's not really contained in their inscriptions We call it dicta. It's just not like ordinary dicta. Well, but again, I mean, let me bring this back. I only have a few minutes left. Let me bring this back to the case at hand. Is there reasonable confusion? Is there what we call a Is there evidence for a good excuse? Is there evidence for an excuse not to exhaust? His excuse for not exhausting is that he's in the process of exhausting. And the district court said that. My colleague in his briefing has as much as said that. How does this not render these cases routine? I'm sorry? I assume you would do that. Examines the state court record I think the first And we go, ah, okay, now Well, now looking back at this After you've done all this work, it really doesn't look like there's a time to do that. Well, I think the first part of your question is absolutely fair. You look at it at the time that they file. I mean, why not? But at the time that he filed, he waited nine months. In a circumstance that in his discretion, the district court judge said is entirely ordinary. It's entirely ordinary to be there for ten months. I mean, how does this not How does this not swallow exhaustion? How does this not swallow good cause? To say, well, you know, I'm not really comfortable with the deadline even though it's really facially clear I'm not really comfortable with the deadline so I'm going to go ahead and file a case petition. I mean, how does that not just swallow good cause? Can I ask you something? You're the boss. What's the status of the The final briefing by the state was, I believe, a cross-appeal reply brief was filed Monday. Briefing just completed. And it probably I mean, knowing the national court, I don't know how many Nevada cases you've handled specifically, but I'd say eight months to a year is a good rough estimation before, yeah, they argue or whatever. And then I want to make one other point, which is as Mr. Navas argues, well, what's the harm? Nobody's going to be harmed if one case is stayed on the district court docket. Nobody's going to be harmed. The harm is that this is a this is a violation of AEDPA. This is a violation of the twin purposes of AEDPA. I mean, if we're not protecting that, then what procedural rights I mean, are we protecting? We encourage exhaustion in state court. And Mr. Navas is a perfect example because he exhausted and achieved the relief that he wanted, at least in part. We encourage exhaustion. How does this I'm sorry? That argument you just advanced butts up against Rines. Well, Rines controls. Haste does not control. You still have to show good cause and stays are still only appropriate in limited circumstances. That limited circumstances has to be given some effect. If there are no limited circumstances, then you're not giving effect to the language of the Supreme Court. Thank you. Thank you for having us. The point I'd like to address is this argument the state is now making for the first time in the proceedings that Mr. Navas should have or could have sought a stay under the Kelly procedure. This was a pre-Rines procedure that this court had adopted that requires you to dismiss have all of your unexhausted claims dismissed while you're back in state court. I think it would be foolish for anyone nowadays to seek a Kelly stay. First of all, you have to ask the court's permission to stick those dismissed claims back in. Given the orders that we got from the district court, I don't think that's by any means a certainty. Second, and again, I didn't have an opportunity to brief this issue because it didn't come up, but there have been several cases from this court that have said that, you know, if you do use this Kelly procedure and you come back and you seek to re-add those claims, they don't relate back to your initial petition if the claims were unexhausted at the time. If you're still at the same place, you've lost those claims. It's absolutely not something that Mr. Novice or any reasonable petitioner would consider. He's entitled to a rind stay and he should have received one. Was there any other questions? Yeah, let me ask you a question. Both of you talk about this, but I the argument that the State makes is pretty good, as the Supreme Court has said. I mean, if you use this procedure regularly, then it's pretty good. And then Ryan says that the District Court has discretion to analyze certain things that have good cause for the petitioner's failure to exhaust or exhaustive claims on a claim to be meritless and no indication that he engaged in potentially regulatory litigation tactics. Where do you draw the line? I think the State is arguing that this obliterates the statute of limitations and therefore you have to come up with something to show that those factors that I've just read. What would your rule of law be if you were a Supreme Court Justice controlling four other courts? How would you articulate whether the District Court is using this discretion? Do you understand the question? In other words, he's saying, hey, he's got plenty of time. He's got plenty of time. No, we're not sure. We might get flushed out by the statute of limitations or the statute of limitations. He's saying, well, there's still cases pending in the Supreme Court. Why isn't that good enough? In other words, just dismiss them all. When the Supreme Court has done, bring them all back. That's all they're asking. If I could write my own standard from scratch, what I would do is overrule Pace and Rudin and sort of remove this whole requirement that you run into file a protective petition in the first place. I think a petitioner should be entitled to rely upon what's happening in state law. But that's not the law. The law is that you've got to file a protective petition if there's a concern about losing your rights to federal review. So what I would say is that the standard for analyzing this at the point where the petitioner comes into court with his protective petition and saying, I have a concern, has to be lenient. I'm not saying everybody gets to stay just because they come into court. Well, there are other considerations. Well, I'm sorry. Judge Fischer has a question. I just wanted to ask, assuming you follow that direction, what specifically is the concern in this case? What is it? Just the notion that it's jurisdictional and litigation. Is there any manifest specific thing that you can point to which says that there's confusion or a good cause? First, I think the determination should be made based on what the petitioner knew at the time he filed his petition. I agree that subsequent to that it's been litigated as a timely petition and I hope that will hold up, but he didn't know that all this stuff would happen when he filed his petition. He shouldn't be charged with his knowledge after the fact. The second point, I guess, is what you were implying, that you can never really be sure in Nevada in particular. I'm asking what I said. What are you saying? Anything more than the fact that it's a jurisdictional issue that would pop up? I guess if I needed to, I would say that this Nevada specific way of interpreting the laws is something that should usually allow a petitioner to get a stay, but in this particular case, I don't think we need to go quite that far. We can say that just based on where this was at when he filed the petition, there was at least some reasonable confusion going on. This is a guy who just ran right into federal court as soon as What court is he in now? He's in Nevada Supreme Court. The state's representation was correct. The briefing is submitted, so we're waiting for the Nevada Supreme Court to either grant relief on everything, which is what we want, or to grant relief on nothing, which is what the state wants, or possibly do something else. That's what I'm trying to get at. How would you be injured by confirming this statement when that case in Nevada is certainly pending, and you all agree there's no statute of limitations for any claim that he's made? We all agree on that, but the problem is we don't know yet what the Nevada Supreme Court thinks. When you know what the Nevada Supreme Court says, then you've got your decision from the Nevada Supreme Court, and that's what you're waiting for, right? I would be perfectly fine with waiting to see what the Nevada Supreme Court does here, but if what the state wants happens, and this petition is dismissed, and then the Nevada Supreme Court comes in and says, guess what? We think there's a timeliness issue. All of a sudden, we're left holding the bag here like Pace and Rudenberg. There were other two factors. There were other factors on the Rhine standard.  think those other two factors are even disputed. No, but they also help the Taylor limit when staying in the issue. I agree. Rhines is specifically concerned. I'm not going to say it's completely concerned, but it's specifically concerned with capital petitioners. There's some concern that some of these people may want to stretch out the proceedings to avoid the end result. This is the opposite of what's happening here. Thank you. Matter is submitted. That ends our session. Thank you.
judges: Quist, Fisher, Paez